# Keystone Telephone Company, Appellant, *v.* Philadelphia & Reading Railway Company.

*Municipalities—Telephone company—Conduit under streets—Elevation of railroad tracks—Damages.*

Where a municipality grants to a telephone company the right to lay conduits under its streets the grant is subject to such reasonable regulations as the city may properly make under its police power. If the city changes the grade of a street, in the interest of public safety, so as to elevate the tracks of a railroad company under an agreement with such company, and as a consequence a telephone company is compelled to relocate certain of its conduits under the street, the telephone company cannot recover either from the city or the railroad company the costs of such relocation.

Argued Dec. 16, 1913.    Appeal, No. 188, Oct. T., 1913, by plaintiff, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1910, No. 992, for defendant on case stated in suit of Keystone Telephone Company of Philadelphia v. Philadelphia & Reading Railway Company.    Before RICE, P. J., HENDERSON, ORLADY, HEAD and PORTER, JJ.    Affirmed.

Case stated to determine liability for cost of relocating conduits.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in entering judgment for defendant.

*James Collins Jones,* for appellant.—The ordinance approved December 26, 1902, granting the Keystone Telephone Company of Philadelphia the right to occupy the highways of the city for the purposes of its business became upon the construction of the plant of the telephone company an irrevocable and inviolable contract protected by the state and federal constitutions: Cleveland v. Cleveland Electric Ry. Co., 201 U. S. 529;

Louisville v. Cumberland Telephone & Telegraph Co., 224 U. S. 649; Grand Trunk Western Ry. Co. v. South Bend, 227 U. S. 544; Penna. Water Co. v. Pittsburg, 226 Pa. 624.

The telephone company cannot be required to change the location of its ducts to accommodate the works belonging to another public service corporation: Com. v. Bond, 214 Pa. 307; Philadelphia, Morton, etc., Ry. Co.'s Petition, 203 Pa. 354.

If the railway company was elevating its railroad without any assistance from the city, then, under the case of Com. v. Bond, 214 Pa. 307, cited above, there would be no doubt about its liability to the telephone company for the injury to the property of the telephone company set out in the case stated.

It has been decided that the fact that a railway company contributes to the cost of changing the grade of the highways does not affect the rights of the public service corporations having works under such highways so as to give them rights to damages that they would not otherwise have: Springfield Water Co. v. Philadelphia & Garrettford Street Railway Co., 45 Pa. Superior Ct. 516.

*Wm. Clarke Mason,* for appellee.—It is respectfully submitted that ample authority to enter judgment in favor of the defendant is found in Scranton Gas & Water Co. v. Scranton, 214 Pa. 586; Springfield Water Co. v. Philadelphia & Garrettford Street Railway Co., 45 Pa. Superior Ct. 516.

OPINION BY ORLADY, J., February 20, 1914:

The only right or authority the Keystone Telephone Company of Philadelphia had to construct, under the highways of the city, its underground conduit system, in which to carry its cables and wires, and operate its telephone service is derived through its contract with the city. The terms of this contract are clearly set out

in the two ordinances that are incorporated in the case stated. The grant made by the city to the telephone company is subject to such reasonable regulations as the city may properly make under its police power, Scranton Gas & Water Co. v. Scranton, 214 Pa. 586; Grand Trunk Western Ry. Co. v. South Bend, 227 U. S. 554, and by virtue of this police power, the city had the right to require that the telephone company would shift the location of its ducts so as to accommodate its conduits to the change in the grades of public highways, and other public works belonging to the city: Pittsburg v. Gas Co., 34 Pa. Superior Ct. 374; Springfield Water Co. v. Street Ry. Co., 45 Pa. Superior Ct. 516.

By the contract it is provided, that "All work to be done under this ordinance, both in the construction of the plant and in the maintenance and carrying on of the business under the same, shall at all times be subject to the ordinances of the city, now in force or which may be hereafter passed, and not inconsistent with the provisions of this ordinance relating to the construction, maintenance, extension, taxation, etc.," and further, "The laying, construction, and maintenance of all wires, electrical conductors, conduits, tubes or cables shall be under the supervision of the chief of the electrical department and subject to his approval, and the same shall be laid under the rules and regulations of the Board of Highway Supervisors," and by another section it is provided, that, "If in the laying of water or gas pipes, sewers, or other municipal work, it shall become necessary to change the location of any of the conduits, manholes or other structures, they shall be shifted or altered at the cost or expense of the owners, to such places as shall be directed by the Board of Highway Supervisors."

The duty or authority of the city to eliminate dangerous grade railroad crossings is not challenged by the plaintiff in this action, and in effecting these important

city improvements it was decided by the city to have the tracks of the Philadelphia & Reading Railway Company raised by an elevated construction, so as to relieve the street surface travel from the dangers incident to grade crossings. In the doing of this work a contract was made between the city and the railway company by which each was to pay one-half the costs thereof. This change of the streets, and elevation of the railway necessitated a change and relocation of certain conduits of the telephone company, and the plaintiff expended $985.69 in the adjustment of its conduits, etc., to the new conditions as required by the city authorities, which amount it now seeks to recover from the railroad company.

There was not any contract relation between the plaintiff and defendant. The shifting of the conduits was decided upon by the city authorities, and these were removed and replaced under the direction and supervision of the Board of Highways Supervisors of the city. The city was the moving party in securing the elimination of dangerous grade crossings, which were a continuing menace to the safety of the public, and the elevation of the tracks could not be enforced by the city, so that it wisely contracted with the railway company to the advantage of each, and the ultimate protection and convenience of the travel on the streets. This work was done under the joint supervision of the city and the railway company, and it could not be urged with reason that if the work had been done by the city alone, the telephone company could claim to be paid by the city for the expenses it incurred in doing the necessary work to have the grades and levels for its conduits conform to the new street conditions, and unless the city would be liable in an action against it, this defendant is not liable.

The rules of the Board of Highway Supervisors, and the ordinances of the city, by which the construction of its conduits was authorized, provided that "It shall at all times be subject to the ordinances of the city,

now in force or which may be hereafter passed," and there was nothing inconsistent with the provisions of the ordinances in effecting such important municipal work, as was done in this instance by the city. The resultant changes were necessary to enable the telephone company to continue its business, and these were reasonably in contemplation, by the provisions that—they shall be shifted or altered at the expense of the owners, to such places as shall be directed. The telephone company had no voice in deciding whether the streets should be changed, nor how relief from the danger of grade crossings should be secured. Its liability for the cost or expense in changing its own conduits was fixed through the action of the city, and it was not relieved from this liability because the city was fortunate enough to induce the railway company to share the cost of doing this municipal work. Nor was the railway company made liable to the telephone company by reason of its joining with the city in doing this municipal work.

As stated by STEWART, J., in Scranton Gas & Water Co. v. Scranton, 214 Pa. 586, It is the reasonable discretion of the municipal authorities that determines the extent of the change in the streets required to meet public necessities; and to that change whatever it may be, short of an abrogation or annullment of the company's right to maintain its system of pipes in the public streets, the company must conform at its own cost and expense. The same principle was announced in Springfield Water Co. v. Railway Co., 45 Pa. Superior Ct. 516, by HEAD, J. The act of changing the grade was then, in every essential feature, a municipal act, and the defendant company was but the hand through which the necessary physical work was performed.

The judgment is affirmed.