NEW JERSEY BELL TELEPHONE COMPANY, A CORPORA-
TION, RELATOR, v. THE DELAWARE RIVER JOINT
COMMISSION, RESPONDENT.

Submitted May 7, 1940—Decided September 16, 1940.

Before Justices CASE, DONGES and HEHER.

For the relator, *Smith & Slingerland* (*Frederic W. Smith*).

For the respondent, *Mitchell H. Cohen* and *T. Harry Row-
land* (*Augustus F. Daix, 3d,* of the Philadelphia county bar,
of counsel).

The opinion of the court was delivered by

CASE, J.   The Delaware River Joint Commission, in build-
ing the subway authorized by the compact, *R. S.* 32:3-1 *et seq.,*

by supplemental legislation, *R. S.* 32:5-1 and *R. S.* 32:5-2 *et seq.*, and by a contract with the city of Camden made under ordinance provision, utilized practically the entire subsurface of certain Camden streets and in the construction used what is known as the "open-cut" method, whereby the street, from curb to curb, was excavated to a depth of twenty-six feet and the entire space beneath a newly constructed street pavement was then devoted to the purposes of the subway. The New Jersey Bell Telephone Company, by virtue of its corporate powers and under ordinance from and contract with the city of Camden, was, with its telephone equipment, including conduits, manholes and transmission wires, in active possession and use of a portion of that subsurface area. The commission, before beginning work, demanded of the Telephone Company that it remove its interfering structures and gave information that arrangements would be made "to provide a new location suitable for your [the Telephone Company's] needs which will conform to the general plan of relocation of all underground structures in the vicinity." The company responded with a denial that it was subject to compulsion except on reimbursement of expense but to avoid delay proposed that it proceed as requested leaving the question of liability for the cost to be determined later, with the understanding that the company's rights should not "be deemed to have been forfeited or prejudiced in any litigation which may subsequently arise between the parties." The commission, while denying liability, agreed, in substance, to the proposal. All phases of the work are now completed. The commission refuses either to make payment or to proceed with condemnation under its right of eminent domain. This is the return of a rule calling upon the commission to show cause why a peremptory or alternative writ of *mandamus* should not issue directing it to proceed to condemn the "real property of the relator, being the easements, rights of way, uses, licenses, incorporeal hereditaments, and interests in and to the subsurface along Fifth street and adjacent thereto" and to fix the value thereof and the damages suffered by the relator "including the costs to the relator for the removal and relocation of its subsurface equipment, franchises, uses

and interests and otherwise" and to pay the relator the compensation and damages so to be fixed. The alleged cost to the company was $38,900, the items of which are not disclosed. The major expense was that of rigging up and maintaining an emergency system whereby the transmission wires and cables were suspended to the temporary street planking, "standing-by" with expert labor to give immediate attention to the faults which were likely to occur under that make-shift arrangement, keeping step with the progress of the main work and ultimately placing the wires and cables beneath the sidewalk surface.

Relator's brief was predicated mainly upon the provisions of the compact regarding condemnation and eminent domain and particularly upon the closing paragraph of article V (*R. S.* 32:3-6):

"The term 'real property' as used in this compact includes lands, structures, franchises and interests in land, including lands under water and riparian rights, and any and all things and rights usually included within the said term and includes not only fees-simple absolute, but also any and all lesser interests such as easements, rights of way, uses, leases, licenses and all other incorporeal hereditaments, and every estate, interest or right, legal or equitable, including terms of years and liens thereon by way of judgments, mortgages or otherwise, and also claims for damage to real estate."

Relator makes much of the inclusion of "franchises," "easements" and "uses" as proper subjects for condemnation and as giving the commission the right to acquire such interests by condemnation and as imposing the duty to do so if it takes them as well as the duty to make compensation if it does damage to them. In support of that argument relator cites *Newark* v. *Hatt,* 79 *N. J. L.* 548, wherein the court held that damages to property other than that physically taken are recoverable where the authorizing statute contains a pertinent provision. The pertinency of Newark *v.* Hatt depends upon the proposition that the authorizing legislation allows recovery for special damage. Relator's argument, however, lost its force by reason of the subsequent decision by the United States Supreme Court, May 27th, 1940, in the

case of *Delaware River Joint Toll Bridge Commission* v. *Colburn,* 310 *U. S.* 419; 60 *S. Ct.* 1039; 84 *L. Ed.* 1287, which construed identical provisions in the compact respecting the Delaware River Joint Toll Bridge Commission, *R. S.* 32:8-1 *et seq.,* especially the final paragraph of article III (*R. S.* 32:8-4). It was there held that the effect of those provisions was to authorize the commission to acquire the specified interests relating to land, conditioned upon payment of an amount agreed upon or fixed by proceedings in eminent domain; that beyond this the compact imposed no duty or obligation upon the commission to compensate for damages inflicted by its acts but left it subject to such liability as is imposed by the law of the state within which the commission acts; and that only by reading into the words of the compact a strained and unnatural meaning was it possible to find in it a modification of the settled law of the state defining the recoverable damages upon the construction of public works. Applying this rule of statutory construction to the instant case and the equivalent language of the pertinent compact, we understand that the commission was empowered to purchase the enumerated interests by agreement upon price with the owner and that it was further empowered to condemn and to take upon payment of the amount fixed in the condemnation proceedings; but that the compact placed no obligation upon the commission to pursue either course and that since it has not done so it is under no duty or obligation by the provisions of the compact to compensate for damages inflicted by its acts and is subject only to such liability as is otherwise imposed by the laws of the state. The company has not lost any of its franchises and has not been deprived of the easements or uses which are incident to the enjoyment of those franchises. In proceedings for ouster it would, of course, vigorously assert that it has, and is entitled to avail itself of, those rights. It still has its equipment beneath the surface of the same street and so far as appears, and as we suppose, is serving its patrons as efficiently and as satisfactorily as before. It was called upon to share with a public agency the space which, because it is within the lateral lines of the highway, is subject to the

various easements essential to transportation and communication and like public needs. It had procured its earlier location and made its heavy investment in accordance with the law, was obliged to change without advantage to it and considers that the cost of the change should be charged to the agency for whose benefit it was done. We recognize the appeal of that argument but are not moved to the conclusion that compulsion may lawfully be put upon the commission to condemn as a method of reimbursement. The relator's loss, in our view, was consequential. *Delaware River Joint Toll Bridge Commission* v. *Colburn, supra*. There was no taking or acquisition of real property within the meaning of the compact, the statutes or the cases. *Cf. Philadelphia Electric Co.* v. *Commonwealth,* 311 *Pa.* 542; 166 *Atl. Rep.* 892.

We conclude that relator has not established its case with such clarity that the extraordinary remedy of *mandamus* should be granted; consequently the rule will be discharged. Nevertheless we think that inasmuch as the decisions of our state courts in *Colburn* v. *Delaware River Joint Toll Bridge Commission,* 123 *N. J. L.* 197, and *Klement* v. *Delaware River, &c., Commission,* 119 *Id.* 600, were the controlling law when the rule issued, relator had justifiable grounds for instituting the action and that no costs should be allowed.